**JARDIM, MEISNER & SUSSER, PC**
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL BERMAN,<br><br>            Plaintiff,<br><br>        vs.<br><br>NEO@OGILVY LLC AND WPP GROUP USA, INC.<br><br>            Defendant. | Civil Action No:<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff DANIEL BERMAN ("Plaintiff"), by and through his undersigned counsel, and by way of this Complaint against NEO@OGILVY LLC ("Neo") and WPP GROUP USA, INC. ("WPP" and together with Neo, the "Defendants"), alleges as follows:

## SUMMARY OF ACTION

1.      This Complaint arises from the termination of Plaintiff's employment with Neo, by Neo, as directed by certain executive officers of Neo. Neo terminated Plaintiff's employment immediately following, and in retaliation to Plaintiff's attempt to correct several violations of accounting, financial reporting, and legal compliance regulations, and violations of WPP's internal policies. Neo terminated Plaintiff because Plaintiff asserted his authority as "GAAP" (Generally Acceptable Accounting Principles) accounting director to prevent Neo from violating GAAP, and WPP's internal financial and compliance policies, and to prevent Neo from consolidating fraudulent accounting into WPP's consolidated financial statements that were to be presented to public investors of WPP PLC (the publicly traded parent company of Defendants). After Plaintiff's termination, Plaintiff continued his efforts to prevent Neo's unlawful conduct by contacting WPP, in accordance with his duties as a certified public accountant, and pursuant to his obligations under WPP's Code of Business Conduct. However, rather than affording Plaintiff such protection, and rather than addressing Neo's accounting violations, WPP retaliated

against Plaintiff by halting its efforts to re-employ Plaintiff in another of its business units. Plaintiff then sought to report such violations through WPP's internal compliance program; however, Defendants failed to correct their fraud or reinstate Plaintiff's employment. Plaintiff is seeking statutory remedies provided for under the U.S. Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd Frank").

## THE PARTIES

2. Plaintiff is an individual, residing in New York, New York.

3. Plaintiff was an employee of Defendant Neo until Plaintiff was terminated from employment on or about April 30, 2013.

4. Upon information and belief, Defendant Neo was Plaintiff's "employer" within the meaning of New York law, and within the meaning of Dodd Frank and all other applicable laws.

5. Upon information and belief, Defendant Neo is a Delaware limited liability company that maintains business offices, and conducts substantial business operations, in New York, New York.

6. Upon information and belief, Defendant WPP, through its wholly-own affiliates, is the parent entity of Defendant Neo.

7. Upon information and belief, Defendant WPP is a Delaware corporation that maintains business offices, and conducts substantial business operations, in New York, New York.

8. Upon information and belief, Defendant WPP was also Plaintiff's "employer" within the meaning of New York law, and within the meaning of Dodd Frank and all other applicable laws.

9. Defendant Neo and Defendant WPP are subsidiaries of WPP PLC, a foreign corporation that issues securities in the United States that are registered under U.S. Securities Exchange Act of 1933 and further subject to the U.S. Securities and Exchange Act of 1934 (collectively, "U.S. Securities Laws")

10. Defendants, and WPP PLC, are regulated by, and subject to, all or a portion of the U.S. Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley").

11. Defendants, and WPP PLC, are regulated by, and subject to, all or a portion of Dodd Frank.

12. Defendants, and WPP PLC, are regulated by, and subject to, the U.S. Securities Laws.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction of this action by pursuant 28 U.S.C. § 1331 because Plaintiff is asserting claims under a federal statute, namely the U.S. Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203.

14. This Court has supplemental jurisdiction of this action pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court because Defendants violated Dodd-Frank in this District, and because Defendants reside in this District.

## FACTUAL ALLEGATIONS

16. Plaintiff was employed by Defendants as Finance Director of Neo@Ogilvy North America.

17. Plaintiff's employment commenced on or about October 12, 2010, and was terminated effective on or about April 30, 2013.

18. In his capacity of Finance Director, Plaintiff was responsible for the accuracy of Neo's financial reporting, and Neo's compliance with GAAP, and for compliance with WPP's accounting policies.

19. In this regard, accordingly, Plaintiff had responsibility under Sarbanes Oxley, Dodd Frank and the U.S. Securities Laws to detect and report (to both Neo and WPP) accounting irregularities, fraud and material compliance failures.

20. During the course of his employment, Plaintiff detected that Neo, through certain officers of Neo, had committed, or were seeking to commit, accounting irregularities, accounting fraud and material compliance failures (i.e., compliance failures under WPP policies, GAAP and U.S. Securities Laws).

21. Plaintiff had reason to believe that Neo's officers were taking these actions, in violation of policy, law and GAAP, in knowing violation, for inappropriate purposes.

22. Plaintiff had reason to believe that Neo's officers were taking these actions, in violation of policy, law and GAAP, in knowing violation, in order to make Neo's financial performance seem more profitable than it actually was. More specifically, if Neo did not reach certain performance targets or milestones, then WPP policies would have prohibited Neo from taking certain actions, such as accruing executive compensation bonuses, and hiring new employees.

23. Plaintiff reasonably believed that certain officers of Neo were committing accounting fraud, in order to circumvent WPP policies, and in secret from WPP accounting officers. Plaintiff reasonably believed that these Neo officers were committing such fraud in order to accrue executive compensation bonuses for themselves.

24. Plaintiff reasonably believed that these officers were violating GAAP, Sarbanes Oxley, Dodd Frank and U.S. Securities Laws.

25. Plaintiff reasonably believed that if he advised Neo officers to correct their accounting reporting, that he would be protected under WPP policies, and under Sarbanes Oxley and Dodd Frank.

26. Plaintiff reasonably believed that if he advised WPP officers of Neo's accounting transactions, that he would be protected under WPP policies, and under Sarbanes Oxley and Dodd Frank.

27. Even after Plaintiff was terminated by Neo, Plaintiff continued to act under WPP's policies and codes of conduct. He sought to alert appropriate WPP officers and directors

of Neo's accounting and compliance violations, and that his employment was unlawfully terminated.

28. As a direct result of these activities, WPP ceased working with Plaintiff to find Plaintiff a new position at a different business unit, in accordance with WPP policy. Prior thereto, Plaintiff was working with a WPP human resources officer to find such a position. But that officer suddenly and without notice terminated all contact.

29. Upon information and belief, WPP become complicit in Neo's unlawful contact, and tried to cover it up.

30. Accounting, financial and audit officers of WPP at the highest levels ignored Plaintiff's attempts to correct Neo's accounting fraud and unlawful conduct.

31. Upon information and belief, WPP is complicit in permitting its business units to violate GAAP, WPP policies, and U.S. Securities Laws for the purpose of fraudulently improving its consolidated financial reports that are presented to its U.S. securities holders.

### REPORTING ACTIVITIES PROTECTED UNDER LAW

32. As part of its business practices, Neo receives monetary deposits of cash from its clients for Neo to utilize to purchase advertising. Under contract and law, Neo is obligated to purchase appropriate advertising, and pay the media companies that run the advertisements. This process is standard for Neo and similar media companies, and the funds that Neo and similar companies hold on deposit for their clients are referred to as "WIP."

33. In or around August of 2012, Plaintiff detected that Neo's WIP was increasing at a greater than expected level. Upon investigation, Plaintiff determined that Neo was purchasing advertising for Neo clients, and <u>knowingly</u> delaying payments to the media companies that run the advertisements. The result was that Neo was improperly holding client money, and improving its own cash flow and cash position. Upon information and belief, these practices related to WIP were intentionally fraudulent and intended to permit Neo to circumvent GAAP accounting and WPP policies.

34. Further, Plaintiff detected that Neo was focusing this improper practice on a very large Neo client, IBM. Bradley Rogers, a non-accounting senior officer of Neo, either implemented or approved a process in which IBM's advertisements would not be paid for, unless and until Neo received a complaint from a vendor owed money. Those vendors that complained received prompt payment, and those that did not received payment only after significant delay.

35. This practice intentionally harmed IBM because Neo was able to hold onto and utilize IBM's capital for its own purposes in violation of GAAP and WPP policies, and possibly in violation of law (the "IBM Fraud").

36. Plaintiff objected to these practices – reported them to his supervisors - and caused them to be reviewed and corrected by WPP finance and compliance officers. Following Plaintiff's objection to these practices, Bradley Rogers, was angry at Plaintiff and sought to retaliate against him.

37. In January of 2013, that same non-accountant executive of Neo, Bradley Rogers, attempted to execute certain accounting transactions that would improperly, and fraudulently, improve the financial results of Neo. These transaction related to Neo improperly recognizing revenues that were not yet permitted to be recognized under GAAP or WPP policies. Upon information and belief, those accounting transactions were intentionally fraudulent and were intended to permit Neo to circumvent GAAP accounting, and further circumvent WPP policies. Such executive of Neo desired to falsely inflate Neo's profits so that, pursuant to WPP policies, Neo would be allowed to accrue executive bonus compensation, implement employee promotions.

38. Plaintiff objected to those accounting transactions – reported them to his supervisors - and caused them to be cancelled. However, that non-accountant Neo executive, Bradley Rogers, was angry at Plaintiff by reason of Plaintiff's lawful and proper efforts, and sought to retaliate against him.

39. The foregoing issues were documented through emails that should be in possession of Defendants.

40. In February of 2013, that same non-accountant executive of Neo, Bradley Rogers, attempted to execute certain accounting transactions that would improperly and fraudulently "reverse" accounting reserves directly into Neo's profits. Upon information and belief, those accounting transactions were intentionally fraudulent and were similarly intended to permit Neo to circumvent GAAP accounting, and further circumvent WPP policies. Further, those transactions were clearly in violation of GAAP, clearly fraudulent, and would have caused Neo to consolidate fraudulent accounting results into WPP's publicly issued financial statements.

41. Plaintiff once attempted to prevent those accounting transactions; however, this time, Neo was successful in reporting such fraudulent accounting results to WPP. Upon information and belief, one or more accounting officers of Defendants over-ruled Plaintiff and permitted Neo to record these improper and fraudulent accounting transactions. Once again, that non-accountant Neo executive was angry at Plaintiff and sought to retaliate against him.

42. By reason of these improper accounting transactions, Neo was permitted to accrue executive bonuses, and employment employee promotions. Not surprisingly, one of the employees who received a promotion was Bradley Rogers.

43. In March of 2013, a senior level executive attempted to obtain favorable and "lenient" payment terms for a client with whom he has a personal relationship. When it became known that the client had become a collection issue for Neo, Plaintiff reported that the client was required, under WPP policies, to be deemed a "cash in advance" client. Further, when it became known that the client was over 5 months late in paying invoices, and was disputing a portion of the owed amount, an accounting reserve should have been immediately established within the March 2013 financial statement. Plaintiff attempted to record and assure that Neo's financial statements correctly reported these matters in compliance with GAAP and WPP policies. Once again, a certain executive of Neo was angry at Plaintiff and sought to retaliate against him.

44. Following these events, and other events that will be uncovered through discovery, Defendants terminated Plaintiff's employment.

45. As a result of Rogers' actions, Neo did retaliate against Plaintiff, and imposed upon him adverse personnel actions, including his termination from employment.

46. Such termination of employment was undertaken by Neo in retaliation of Plaintiff's lawful financial reporting and accounting activities that he undertook in accordance with his explicit duties and in accordance with U.S. Securities Laws and WPP policies.

47. Plaintiff's foregoing activities were protected under Dodd Frank.

48. Plaintiff's foregoing activities were protected under Sarbanes Oxley.

49. Plaintiff's foregoing activities were protected under U.S. Securities Laws.

50. Plaintiff's foregoing reporting activities were protected under WPP policies.

51. Following Plaintiff's termination, Plaintiff continued his efforts to cause Neo to comply with GAAP, WPP policies, and law, by notifying the Chief Financial Officer-North America of Ogilvy & Mather, Neo's direct parent entity, of the foregoing matters.

52. However, Plaintiff's pleas were ignored.

53. Plaintiff continued his efforts of correcting Neo's accounting fraud by communicating, through his counsel, to Defendants counsel.

54. Further, Plaintiff made efforts to determine whether or not Plaintiff's efforts had reached the Audit Committee of Defendants' publicly traded parent company, WPP PLC. Plaintiff was not able to ascertain whether or not such Audit Committee was notified. For example, no internal auditor of Defendant had ever contacted Plaintiff and no compliance investigator of Defendant had ever contacted Plaintiff.

55. Accordingly, on August 12, 2013, by letter from his attorneys, Plaintiff notified the Chair of the Audit Committee of the Board of Directors of WPP PLC, the ultimate publicly-traded parent company of Defendants.

56. Such notice to WPP PLC constituted utilization of WPP's and Neo's "internal compliance program."

57. The Audit Committee received such letter and, finally, an internal auditor agreed to interview Plaintiff regarding Plaintiff's efforts to correct Neo's accounting fraud.

58. However, WPP refused to acknowledge any wrongdoing whatsoever, and refused to take any action with regard to Plaintiff's notifications, and refused to reinstate Plaintiff's employment.

59. Accordingly, on October 31, 2013, Plaintiff reported to the Securities Exchange Commission, by the filing of a Form TCR, WPP's and Neo's violations of U.S. Securities Laws.

60. In connection with such report, during the period of November 7, 2013 through November 14, 2013, Plaintiff cooperated with the accounting investigator for the SEC's Division of Enforcement.

61. Such report was provided in compliance with the requirements of Section 922 of Dodd Frank, and was made within 120 days of Plaintiff's utilization of Defendants "internal compliance program."

62. Plaintiff is a "whistle-blower" within the meaning of Dodd Frank.

63. Even if Plaintiff is not a "whistle-blower" for all purposes of Dodd Frank, Plaintiff is protected by the anti-retaliation provisions of Section 922 of Dodd Frank, because he suffered an adverse employment action in direct response to his attempts to prevent accounting fraud and the presentation of fraudulent financial reports to U.S. investors of WPP PLC's publicly traded securities.

64. Plaintiff was terminated from employment with Defendants in direct retaliation of Plaintiff's protected activities.

65. Plaintiff was refused other employment opportunities with WPP, by WPP, in direct retaliation of Plaintiff's protected activities.

66. Defendants informed Plaintiff that his termination was solely related to a "consolidation of finance teams." Such explanation was false and pre-textual. In fact, on the day of Plaintiff's termination, Defendants were already posting "help wanted" ads for a replacement for his position.

67. Later, Defendants changed their explanation, now claiming that Plaintiff "volunteered" for termination. Such explanation was also false and pre-textual.

68. Plaintiff never "volunteered" for termination. To the contrary, Plaintiff refused to continue to working for Neo officers who were insisting that he remain silent in the face of their attempts to commit accounting fraud and unlawful conduct.

69. Defendants are in possession of electronic mail demonstrating that Defendants' stated reasons for terminating Plaintiff are pre-textual and unlawful.

70. By email correspondence to Defendants attorney on June 3, 2013, Plaintiff demanded of Defendants to preserve, and not spoliate, evidence, and to preserve all emails, relating to this matter, and to issue a "hold notice."

## COUNT ONE
## DODD-FRANK SECTION 922
## ANTI-RETALIATION CLAIM

71. Plaintiff repeats and reasserts the allegations set forth in the foregoing paragraphs as if fully set forth herein.

72. Plaintiff reasonably believed that Defendants were engaging in conduct that was in violation of GAAP, WPP compliance and accounting policies, Sarbanes Oxley, Dodd Frank and U.S. Securities Laws.

73. Such activities included presenting to investors of WPP PLC financial and accounting information that was not in compliance with GAAP, and that was intended to defraud such investors in violation of the regulations of U.S. Securities Laws.

74. Plaintiff acted in good faith.

75. Plaintiff utilized internal reporting procedures.

76. Plaintiff is a whistle blower within the meaning of Section 922 of Dodd Frank or otherwise is afforded the protection of the anti-retaliation provisions of such section.

77. Plaintiff made protected disclosures of violations of statutes under the purview of the U.S. Securities and Exchange Commission.

78. Plaintiff engaged in "protected conduct" within the meaning of Section 922 of Dodd Frank.

79. Defendant Neo terminated Plaintiff's employment in retaliation of Plaintiff's protected conduct.

80. Defendant WPP refused to reinstate Plaintiff and refused to hire him into another WPP business unit in retaliation of Plaintiff's protected conduct.

81. Plaintiff has been harmed by reason of Defendants' unlawful conduct, and he has suffered losses and damages.

## COUNT TWO
## BREACH OF EXPRESS CONTRACT

82. Plaintiff repeats and reasserts the allegations set forth in the foregoing paragraphs as if fully set forth herein.

83. Defendants' policies and codes of conduct and ethics prohibited Defendants, and their agents, from taking adverse personnel actions against Plaintiff as a result of his efforts to protect Defendants against unlawful conduct and accounting irregularities and fraud.

84. Such codes "obligated" Plaintiff to report unlawful conduct to his supervisors, and Plaintiff met his obligations under the policies.

85. Such polices and codes expressly prohibited retaliatory conduct, and created an express contract that benefitted and protected Plaintiff from retaliatory conduct.

86. Defendants' and their agents violated the code by retaliating against Plaintiff, in order to protect their personal interests, and in doing so violated the policies and violated Plaintiff's explicit rights under the policies.

87. Defendants breach such express contract by terminated Plaintiff's employment in retaliation of exposing such unlawful conduct.

88. Plaintiff has been harmed by Defendants conduct and he has suffered losses and damages.

## COUNT THREE
## BREACH OF IMPLIED CONTRACT

89.     Plaintiff repeats and reasserts the allegations set forth in the foregoing paragraphs as if fully set forth herein.

90.     Defendants' policies and codes of conduct and ethics prohibited Defendants, and their agents, from taking adverse personnel actions against Plaintiff as a result of his efforts to protect Defendants against unlawful conduct and accounting irregularities and fraud.

91.     Such codes "obligated" Plaintiff to report unlawful conduct to his supervisors, and Plaintiff met his obligations under the policies.

92.     Such polices and codes expressly prohibited retaliatory conduct, and created an implied contract that benefitted and protected Plaintiff from retaliatory conduct and assured that he would not be terminated by reason of his reporting unlawful conduct and accounting irregularities.

93.     Defendants' and their agents violated the code by retaliating against Plaintiff, in order to protect their personal interests, and in doing so violated the policies and violated Plaintiff's implied rights under the policies.

94.     Defendants breach such implied contract by terminated Plaintiff's employment in retaliation of exposing such unlawful conduct.

95.     Plaintiff has been harmed by Defendants conduct and he has suffered losses and damages.

## JURY DEMAND

Daniel Berman demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,**

Plaintiff, DANIEL BERMAN, demands judgment on his First Claim for Relief against Defendants, including statutory damages under Dodd Frank, reinstatement of employment, double back compensation and employee benefits, with interest, compensatory damages as provided for under Dodd-Frank, and reasonable attorneys' fees and expenses.

Respectfully submitted,

**JARDIM, MEISNER & SUSSER, PC**
30B Vreeland Road, Suite 201
Florham Park, New Jersey 07932
973.845.7640
Attorneys for Plaintiff

By: _____
Richard S. Meisner (RM5223)

Dated: January 20, 2014